UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

                v.

JOSEPH A. CAMMARATA, ERIK COHEN, DAVID H. PUNTURIERI, ALPHAPLUS PORTFOLIO RECOVERY CORP., AND ALPHA PLUS RECOVERY LLC,

                Defendants.

Honorable Chad F. Kenney

Civil Action No. 2:21-cv-04845

---

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER ENJOINING VIOLATIONS OF THE FEDERAL SECURITIES LAWS, FREEZING ASSETS, GRANTING OTHER RELIEF, AND ORDER TO SHOW CAUSE**

---

**PORZIO, BROMBERG & NEWMAN, P.C.**
15 East 8th Street
Ocean City, NJ 08226-3737
(609) 439-4222
*Counsel to Intervening Party Defendant, Nina Cammarata*

*Of Counsel:*
William J. Hughes, Jr.

*On the Brief:*
Sydney J. Darling

6624246

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

LEGAL ARGUMENT .......................................................................................................... 5

POINT 1 ................................................................................................................................. 5

    PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN THAT NINA
    CAMMARATA RECEIVED ILL-GOTTEN FUNDS FROM DEFENDANTS
    AND THAT SHE DOES NOT HAVE A LEGITIMATE CLAIM TO THE
    FUNDS IN THE JOINT ACCOUNT ........................................................................ 5

POINT 2 ................................................................................................................................. 8

    PLAINTIFF MAY NOT BE PERMITTED TO INVOKE THE EQUITABLE
    POWER OF THE COURT TO FREEZE THE DEFENDANTS' ASSETS AS
    PART OF ITS INJUNCTION AS THIS SUIT SEEKS ONLY EQUITABLE
    RELIEF AND SUCH POWER IS NOT CONFERRED BY STATUTE .................. 8

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Commodity Futures Trading Comm'n v. Healy*, No. 09–1331, 2011 WL 1577819 (M.D. Pa. Apr. 26, 2011) ................................................................................................................... 6

*De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945) ........................................... 5, 9, 10

*FTC v. Bronson Partners*, LLC., 674 F. Supp 2d 373 (D. Conn. 2008) ....................................... 6

*FTC v. Direct Mktg. Concepts*, 569 F. Supp 2d 285 (D. Mass 2008) ............................................ 6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ......... 9, 10

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) ............................... 8, 10

*In re Sherman*, 658 F.3d 1009 (9th Cir. 2011) ............................................................................... 6

*Janvey v. Adams*, 588 F.3d 831 (5th Cir. 2009) ............................................................................ 6

*Kimberlynn Creek Ranch*, 276 F.3d 187 (4th Cir. 2002) .............................................................. 6

*Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635 (2017) .................................. 10

*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) .............................................................................. 11

*Matthews v. Eldridge*, 424 U.S. 319 (1976) .................................................................................. 5

*S.E.C. v. Antar*, 831 F.Supp. 380 (D.N.J. 1993) ........................................................................... 7

*S.E.C. v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ........................................................................ 6

*S.E.C. v. Cherif*, 933 F.2d 403 (7th Cir.1991) ........................................................................... 6, 7

*S.E.C. v. Chiase*, No. 10–5110, 2011 WL 6176209 (D.N.J. Dec. 12, 2011) ............................. 6, 7

*S.E.C. v. Colello*, 139 F.3d 674 (9th Cir. 1998) ........................................................................... 6

*S.E.C. v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291 (M.D. Fla. 2009) ..................... 7

*S.E.C. v. George*, 426 F.3d 786 (6th Cir. 2005) ........................................................................... 6

*S.E.C. v. Heden*, 51 F.Supp. 296 (S.D.N.Y. 1999) ....................................................................... 7

*S.E.C. v. Infinity Grp. Co.*, 993 F.Supp. 324 (E.D. Pa. 1998) ....................................................... 7

*S.E.C. v. McGee*, 895 F. Supp. 2d 669 (E.D. Pa. 2012) .................................................................. 6

*S.E.C. v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) .................................................................... 8

*Smith v. S.E.C.*, 653 F.3d 121 (2d Cir. 2011) ............................................................................. 6, 8

*United States v. Cohen*, 152 F.3d 321 (4th Cir. 1998) .................................................................. 10

**Rules**

FED. R. CIV. P. 64 (2021) .............................................................................................................. 10

## PRELIMINARY STATEMENT

Intervening party defendant, Nina Cammarata ("Nina"), submits this memorandum of law in opposition (the "Opposition") to the motion filed by the plaintiff, Securities and Exchange Commission ("Plaintiff"), styled, *Motion for a Temporary Restraining Order Enjoining Violations of the Federal Securities Laws, Freezing Assets, Granting Other Relief, and Order to Show Cause* (the "Freeze Motion"), which was filed on an *ex parte* basis via Order to Show Cause.[1]

Nina Cammarata is an innocent third-party who is not implicated in the securities fraud alleged by Plaintiff to have been committed by the defendants ("Defendants") in this case. Plaintiff did not name Nina Cammarata as a "nominal" defendant despite the fact that Plaintiff is seeking to freeze assets jointly owned by her and her estranged husband, Defendant Joseph Cammarata. At this time, Nina is primarily concerned with gaining access to a bank account jointly held by Nina and Mr. Cammarata (referred to herein as the "Joint Account"), to which she requires immediate access in order to pay day-to-day living expenses including the mortgage on her home.

While listed on Appendix A to the Ruta Declaration[2] as an account "held by individuals and entities that, directly or indirectly, received funds from AlphaPlus," Plaintiff does not specifically allege in the Complaint or the Ruta Declaration that any ill-gotten gains were deposited into the Joint Account and presents no evidence to support its inclusion on Appendix A of the Ruta Declaration. Further, Plaintiff fails to demonstrate the amount of ill-gotten gains it contends were deposited into the Joint Account, which is certainly relevant to the scope of any injunction that may issue. Since approximately last Thursday, Nina has been deprived of access to the Joint Account, without notice, to the detriment of her and her son.

---

[1] Incidentally, Ms. Cammarata was not provided a copy of the Freeze Motion and the Freeze Motion does not appear to be publicly available on the docket of this case. Accordingly, Ms. Cammarata is in the dark with respect to the legal basis for the temporary restraints placed on her assets.

[2] "Ruta Declaration" refers to the Declaration of Dustin E. Ruta in Support of the Freeze Motion [Dkt. No. 3].

6624246

As an initial matter, Plaintiff should have named Nina as a nominal defendant if it intended to interfere with her property rights.  Nevertheless, Plaintiff has not met its burden to establish entitlement to the relief requested with respect to Nina.  Assuming it has the authority to do so in the first place, in order to freeze the assets of a non-party, the government must establish that the non-party received ill-gotten gains and if so, that the third party does not have a legitimate claim to them.  Moreover, any freeze should be limited in scope to the amount of funds the government establishes are ill-gotten gains to which the third party is not entitled.  Plaintiff here has not specifically alleged that ill-gotten gains were deposited into the Joint Account or identified their value, let alone established these facts, which are critical to the relief it seeks.

In addition, it is unclear whether the Securities and Exchange Commission has the right to a preliminary injunction freezing the assets of any Defendants in this case, let alone a would-be nominal defendant such as Nina.  Indeed, there is no specific statutory authorization for the injunctive relief sought by Plaintiff.  It is well established United States Supreme Court precedent that, absent such authorization, a federal district court does not possess the power to order an asset freeze as part of an injunction in a suit seeking equitable relief and penalties.

Accordingly, Nina Cammarata respectfully requests that the Court deny Plaintiff's Freeze Motion with prejudice or, alternatively, release the Joint Account from the freeze subject to terms acceptable to the Court (including removal of Joseph Cammarata from the account) to allow Nina Cammarata to continue to use the funds in the Joint Account for living expenses, including payment of the mortgage on the Monmouth Beach House (as that term is defined herein), among other things.  Nina is willing to work with Plaintiff to resolve her Opposition consensually but was compelled, under the circumstances, to file this Opposition to protect her legitimate property interests and preserve her objections.

## STATEMENT OF FACTS

Nina Cammarata is the estranged spouse of defendant Joseph Cammarata. (N. Cammarata Decl.,[3] ¶3.) Nina filed a petition for divorce against Mr. Cammarata in May 2020 in the State of New Jersey. (*Id.*) The divorce proceedings are ongoing. (*Id.*) The Cammaratas jointly own three (3) pieces of real property (the "Property") – a house in Monmouth Beach, NJ, a house in the Pocono Mountains of Pennsylvania, and an Bahamian island known as "Sandy Cay." (*Id.* at ¶¶2 & 7-8.) Plaintiff fails to disclose the joint ownership of the Property in the Ruta Declaration. The Monmouth Beach house is Nina's primary residence. (*Id.* at ¶2.) It is encumbered by a mortgage, which requires the payment of $5,000 per month to maintain. (*Id.* at ¶6.) The Cammarata's have a joint account (the "Joint Account") from which the mortgage on the Monmouth Beach house is automatically deducted and Nina's living expenses are paid. (*Id.* at ¶¶6 & 10.) The Joint Account is a joint sub cash management account (or CMA) with Merrill Lynch ending in 8187. (*Id.* at ¶10.)

During their marriage as well as throughout the divorce proceedings, Mr. Cammarata paid for all of the expenses associated with the other Properties (Sandy Cay and the Poconos). (*Id.* at ¶10.) Nina does not know what these expenses are or how they were paid, but she does know that as a joint owner of these properties, she may be jointly liable for these expenses. (*Id.* at ¶7.) Nina may also have an interest in other assets subject of the Freeze Motion by virtue of her marital interest in the property and subject to a future equitable distribution order from the matrimonial court in New Jersey.

Nina has not been accused of any wrongdoing by Plaintiff or otherwise in connection with the crimes of which her estranged husband is accused. It is her firm belief that at all times during

---

[3] "N. Cammarata Declaration" refers to the Declaration of Nina Cammarata filed in support of Nina's Motion to Intervene [Dkt. No. 6].

6624246

their marriage, Mr. Cammarata had significant sources of legitimate income. (*Id.* at ¶13.) At all times prior to his arrest, Nina was unaware of Mr. Cammarata's alleged illegitimate business dealings. (*Id.* at ¶12.) Mr. Cammarata did not reveal the specifics of his affairs – business, financial or personal – to Nina during their marriage. (*Id.*) Plaintiff has not specifically alleged or demonstrated in the Ruta Certification that any proceeds from the alleged fraudulently obtained funds were deposited into the Joint Account.

In connection with the relief sought by Plaintiff in this case, Plaintiff has requested the Court freeze all assets of the Defendants, including the assets of Mr. Cammarata and critically, including the Joint Account. Nina requires immediate access to the Joint Account for her living expenses as well as to pay the mortgage on her principal residence and maintain the Properties. If she does not receive immediate access to the Joint Account, she will be irreparably harmed and the Properties may be subject to waste and possibly adverse legal action, including liens and foreclosure for non-payment of a mortgage, taxes, and HOA fees. Maintenance of the Properties is equally beneficial to Plaintiff in the event they are ultimately seized in connection with this case. If the mortgage is not paid and the Properties are not maintained, these assets will be wasted. Accordingly, Nina has sought to intervene in this action in order to protect her rights and interest in certain of the assets subject of Plaintiff's Freeze Motion and opposes the preliminary injunction sought by Plaintiff with respect to the Joint Account and other assets belonging to her.

# LEGAL ARGUMENT

## POINT 1

**PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN THAT NINA CAMMARATA RECEIVED ILL-GOTTEN FUNDS FROM DEFENDANTS AND THAT SHE DOES NOT HAVE A LEGITIMATE CLAIM TO THE FUNDS IN THE JOINT ACCOUNT**

Nina Cammarata is an innocent third-party who is also a victim of the fraud alleged by Plaintiff. By failing to name Nina as a nominal defendant, Plaintiff has failed to establish personal and subject matter jurisdiction with respect to Nina and her assets. This is text book deprivation of due process of law. Notwithstanding the foregoing, even had Plaintiff named Nina as a nominal defendant, Plaintiff has not established (or even specifically alleged) that ill-gotten gains were deposited into the Joint Account.[4]

As an initial matter, due process of law requires notice and an opportunity to be heard before the government may deprive a private citizen of his or her property interests. *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976) ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."). Despite her joint ownership of assets subject of the Complaint and the Freeze Motion, Nina was not named as a nominal defendant in the Complaint and was not given notice of the Freeze Motion. As such, she has sought to intervene in this action in order to protect her interests in and rights to certain assets over which Plaintiff seeks to control.

Moreover, the government does not have carte blanche to freeze and ultimately seize assets that belong to a third party. This is particularly critical where, as here, the government's power to "freeze and seize" is not statutory and is based on equitable grounds. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 219-20 (1945). While the Third Circuit has not opined on the issue,

---

[4] Nina Cammarata reserves the right to challenge Plaintiff's freeze and ultimate seizure of other joint or martial assets.

5

6624246

circuit-level caselaw throughout the country is consistent that when it comes to seizing assets of non-parties, the government must establish that the third party "has received ill-gotten funds" and "does not have a legitimate claim to those funds." *See Smith v. S.E.C.*, 653 F.3d 121, 128 (2d Cir. 2011) (citing *S.E.C. v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998)); *In re Sherman*, 658 F.3d 1009, 1022 (9th Cir. 2011) (applying *Cavanaugh*); *Janvey v. Adams*, 588 F.3d 831, 835 n.2 (5th Cir. 2009) (same); *S.E.C. v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (same); *Kimberlynn Creek Ranch*, 276 F.3d 187, 192 (4th Cir. 2002) (same); *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (same); *S.E.C. v. Cherif*, 933 F.2d 403, 414 n.11 (7th Cir.1991) (same).

If and when the SEC proffers sufficient evidence to the court showing that a specific amount of ill-gotten funds are alleged to have been received by a relief defendant (which has not happened here), the inquiry turns to whether the relief defendant has a legitimate claim to such funds. Consequently, "the burden [would then] rest[] with the Commission to show that the funds in the possession of [Nina Cammarata] are ill-gotten." *See FTC v. Bronson Partners*, LLC., 674 F. Supp. 2d 373, 392 (D. Conn. 2008) (citing *FTC v. Direct Mktg. Concepts*, 569 F. Supp. 2d 285 (D. Mass 2008)).

Courts in this District have applied the same test deriving from *Cavanaugh* when considering whether a freeze of a non-party's assets is appropriate. *See S.E.C. v. McGee*, 895 F. Supp. 2d 669, 686 (E.D. Pa. 2012). In addition, other district courts within the Third Circuit have applied the same standard. *See Commodity Futures Trading Comm'n v. Healy*, No. 09–1331, 2011 WL 1577819, at *2 (M.D. Pa. Apr. 26, 2011); *S.E.C. v. Chiase*, No. 10–5110, 2011 WL 6176209, at *3–4 (D.N.J. Dec. 12, 2011) ("The SEC bears the initial burden of establishing that a fraud occurred, that [the non-party] received funds from that fraud, and that she had no legitimate claim to those funds. Once that is established, the SEC also bears the initial burden of establishing that

the disgorgement figure is a reasonable approximation of the unlawful profits."); *see also S.E.C. v. Infinity Grp. Co.*, 993 F.Supp. 324, 331 (E.D.P.A. 1998); *S.E.C. v. Antar*, 831 F.Supp. 380 (D.N.J. 1993) (quoting *Cherif,* 933 F.2d at 414 n. 11).

Consistent with fairness and reason, in *SEC v. Heden*, the court limited the SEC's freeze to profits in the third-party's account that were derived from the securities fraud committed by her son. *S.E.C. v. Heden*, 51 F.Supp. 296, 298 (S.D.N.Y. 1999). The court refused to allow a freeze of the entire account. *Id.* at 302; *see also Chiase*, 2011 WL 6176209, at *5 (allowing freeze up to amount of established ill-gotten gains deposited into account to which non-party had access). Moreover, the jointly held nature of the Joint Account does not preclude the court from granting Nina the relief she seeks. "The case law only requires an 'ownership interest' or 'legitimate claim' in the funds to preclude an entity from being a proper relief defendant. This does not require possession of the full bundle of ownership rights that may exist in various types of property." *S.E.C. v. Founding Partners Cap. Mgmt.*, 639 F. Supp. 2d 1291, 1294 (M.D. Fla. 2009) (expounding upon the Seventh Circuit's opinion in *Cherif*, 933 F.2d at 414).

Here, Plaintiff has not alleged with any specificity that ill-gotten gains were deposited into the Joint Account (or their value), let alone established these facts. Nor has the government alleged, or established, that Nina does not have a legitimate claim to the funds in the Joint Account. Nina knew her husband to have substantial legitimate businesses over the years and until proven otherwise, believes those businesses, as well as the couple's accumulation of assets through legitimate investments and return on invests made over the years, funded the Joint Account. While Nina reserves her right to challenge Plaintiff's actions with respect to other assets subject to the Freeze Order, at this initial stage it is critical for her to regain access to the source of funds on

7

which she relies for living expenses and to maintain and pay the mortgage on her primary residence.

Finally, with respect to Nina, the injunction sought by Plaintiff is overly broad and would do far more than preserve the status quo. *See, e.g., Smith*, 653 F.3d at 128 (citing *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990)) (noting that where the injunction seeks to do more than preserve the status quo, the SEC should be "obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous the burdens of the injunction it seeks"). Not only does Plaintiff seek to restrain the property (unconnected to the ill-gotten gains) of an innocent non-party, but it seeks to enjoin assets of an undetermined value. The Complaint alleges $3 million in ill-gotten gains were are attributable to the defendants and their alleged fraudulent scheme.  (*See* Complaint, ¶2.)  The law requires that the value of the assts encumbered must bear some reasonable relationship to the likely amount of Plaintiff's expected recovery. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 189 (3d Cir. 1990).  When the breadth of the injunction sought by Plaintiff is balanced against these facts, it is clear Plaintiff has not met its heightened burden with respect to Nina and her assets.

## POINT 2

### PLAINTIFF MAY NOT BE PERMITTED TO INVOKE THE EQUITABLE POWER OF THE COURT TO FREEZE THE DEFENDANTS' ASSETS AS PART OF ITS INJUNCTION AS THIS SUIT SEEKS ONLY EQUITABLE RELIEF AND SUCH POWER IS NOT CONFERRED BY STATUTE

Even if the Court finds that the Joint Account is made up of ill-gotten gains and that Nina Cammarata does not have a legitimate claim to the funds contained therein, this Court may not have the power to issue a preliminary injunction freezing any of Defendants' assets, including those held jointly by Nina and Joseph Cammarata.

8

6624246

The Supreme Court of the United States has long recognized that absent specific statutory authorization, a federal district court does not possess the power to order an asset freeze as part of an injunction in a suit seeking equitable relief, even where the plaintiff is the government or an agency thereof. *See De Beers Consol. Mines*, 325 U.S. at 219-23; *see also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) ("Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages.").

In *De Beers*, the government sued several corporations for violations of federal antitrust laws and in connection therewith, sought a preliminary injunction restraining the defendants from removing their assets from the country pending a final adjudication of the merits. *De Beers*, 325 U.S. at 214-15. Similar to the instant matter, in *DeBeers*, the government argued that unless an asset freeze was imposed, the defendants could secrete or dissipate their assets and thus prevent the enforcement of any final order that the district court might enter. *Id.* at 215. The Supreme Court rejected this argument and held that the requested preliminary injunction was beyond the power of the district court because it was not authorized by statute or the "usages of equity." *Id.* at 220-23. The Court reasoned:

> [t]o sustain the [order freezing the defendants' assets] would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to a chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No

9

>relief of this character has been thought justified in the long history of equity jurisprudence.

*Id.* at 222-23.

Here, there is no specific statutory authority contained in the Securities and Exchange Act for an injunction freezing Defendants' assets.[5]  Nor does New Jersey law authorize such relief under these circumstances.  *See* FED. R. CIV. P. 64 (2021).  Rather, Plaintiff presumably seeks to invoke the Court's equitable powers to authorize the injunction freezing defendants' assets in a case where the only money that will be turned over, if Plaintiff ultimately succeeds, in penal in nature and not remedial damages.  *See Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635, 1643 (2017) ("Disgorgement in the securities-enforcement context is a "penalty" within the meaning of § 2462."); *see also United States v. Cohen*, 152 F.3d 321, 324 (4th Cir. 1998) (holding that an action by the United States brought under the Financial Institutions Reform, Recovery and Enforcement Act seeking monetary penalties for alleged violations of federal banking laws was analogous to *De Beers* and that the government was not entitled to a pre-judgment freeze of defendant's assets); *compare Hoxworth*, 903 F.2d at 194-95 (holding that *De Beers* does not apply to prohibit a preliminary injunction freezing assets where all other elements are met and purpose of injunction is to protect a damages award) (distinguishing *De Beers*).

While it is true that the Securities and Exchange Commission continues to seek preliminary injunctions freezing defendants' assets in enforcement proceedings and courts continue to grant them, it is Nina's position that this practice may be contrary to established Supreme Court precedent, as set forth herein, and may need to be revisited.  As the United States Supreme Court wrote recently, "[i]f anything, the persistent if unspoken message here seems to be that we should

---

[5] Congress has expressly authorized such relief in other laws passed after *De Beers* and *Grupo Mexicano* were decided, for example, the 1983 amendment to Section 6c of the Commodity Exchange Act, 7 U.S.C. §13a-1.

be taken by the "practical advantages" of ignoring the written law." *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2472 (2020).

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiff's Freeze Motion with prejudice or, alternatively, release the Joint Account from the freeze subject to terms acceptable to the Court (including removal of Joseph Cammarata from the account) to allow Nina Cammarata to continue to use the funds in the Joint Account for living expenses, including payment of the mortgage on the Monmouth Beach House (as that term is defined herein), among other things.

Respectfully submitted,

**PORZIO BROMBERG & NEWMAN P.C.**

*/s/ William J. Hughes, Jr.*
   William J. Hughes, Jr.
15 East 8th Street
Ocean City, NJ 08226-3737
Phone: (609) 439-4222
Fax: (973) 538-5146
wjhughes@pbnlaw.com

*Counsel to Intervening Party Defendant,*
Dated: November 8, 2021        *Nina Cammarata*