**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br>**v.**<br><br>**JOSEPH A. CAMMARATA, ERIK COHEN, DAVID H. PUNTURIERI, ALPHAPLUS PORTFOLIO RECOVERY CORP., AND ALPHA PLUS RECOVERY LLC,**<br><br>**Defendants.** | **Civil Action No. 21-cv-04845-CFK** |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT JOSEPH CAMMARATA'S MOTION PURSUANT TO RULE 65(b)(4) TO DISSOLVE THE TEMPORARY RESTRAINING ORDER**

Citing Rule 65(b)(4) of the Federal Rules of Civil Procedure, Defendant Joseph Cammarata ("Cammarata") filed a *pro se* motion for relief from the stay and to dissolve the Temporary Restraining Order. (Dkt. 147). The Court ordered Plaintiff Securities and Exchange Commission to respond to the Motion by 12:00 p.m. on September 28, 2002. (Dkt. 154).

The Court should deny Cammarata's motion. Indeed, Rule 65(b)(4), relied upon by Cammarata, concerns only temporary restraining orders issued without notice, and does not apply here. In January 2022, while represented by counsel, Cammarata consented to the imposition of the Preliminary Injunction, which, among other things, continued the relief originally provided in the Temporary Restraining Order, including the asset freeze, and prohibited Cammarata and the other Individual Defendants, who all consented to the Preliminary

Injunction, from violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. (Dkt. 66). In addition, the relief provided in the Preliminary Injunction is appropriate and amply supported by the record in this case, particularly at this preliminary stage of the litigation in which Defendants have not answered the Complaint or participated in discovery, and in light of Cammarata's financial sophistication, international connections, and disregard for the law.[1]

## I. Cammarata Consented to the Preliminary Injunction and the Stay in this Case

Cammarata's motion fails because he already consented to the entry of the Preliminary Injunction (Dkt. 66); and, before that, he had consented to the continuation of the relief provided in the Temporary Restraining Order. (Dkt. 38). Per the parties' consent, the Preliminary Injunction entered by the Court, among other things, continued the existing asset freeze and enjoined Defendants from future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. (*Id*. at ¶¶ 1-3). At the time the parties consented to the Preliminary Injunction, Cammarata was represented by competent counsel, Faegre Drinker Biddle & Reath LLP, and had unfettered access to his counsel because Cammarata was out on bail. Cammarata and his counsel also knew of and had access to the SEC's arguments in favor of a preliminary injunction,

[1] As Cammarata recognizes, when the Commission obtained the initial Temporary Restraining Order in this case, ex-parte, it submitted a detailed declaration from Dustin Ruta, an SEC accountant, in support of its motion. Mr. Ruta's declaration was nearly 40 pages long with over 130 paragraphs. In addition, Mr. Ruta's declaration was supported by more than 100 exhibits. (Dkt. 3-3.5). When the SEC then sought to have a preliminary injunction entered, and the Court was going to proceed with a hearing – with notice and the opportunity for discovery – Cammarata did not oppose, but actually consented to the relief, which obviated the need for a hearing. Moreover, Cammarata appears to conflate the relief sought by the SEC in the Complaint with the terms of the Preliminary Injunction. For example, the Complaint seeks the imposition of an officer and director bar as relief should the SEC prevail in this case, but the Preliminary Injunction does not include that limitation.

which were set forth in the SEC's extensive submission filed in support of the Temporary Restraining Order, including a motion, memorandum of law, and supporting declarations. Dkt. Nos. 1-4.

In addition, around the same time Cammarata and the other Defendants consented to the entry of the Preliminary Injunction, they also supported a stay of discovery in this civil action, pending resolution of the parallel criminal case, *United States v. Cammarata*, No. 21-cr-427-CFK (E.D. Pa.) ("Criminal Action"). The United States filed a motion to intervene and stay discovery in this case, to which the Cammarata and the other individual Defendants consented and the SEC did not oppose. (Dkt. 68). The Court granted the motion and stayed discovery in this case before Defendants were required to answer the Complaint. (Dkt. 69).[2] Therefore, because Cammarata consented to this relief, the Court should deny Cammarata's motion for relief from the stay.[3]

## II. The Asset Freeze and Obey-the Law Injunction Set Forth in the Preliminary Injunction Are Appropriate, Particularly at this Early Stage of the Proceeding

Moreover, to the extent Cammarata seeks to challenge the asset freeze or injunction prohibiting violations of Section 10(b) of the Exchange Actor Rule 10b-5 thereunder—to which he and his then counsel agreed—the motion should still be denied. First, the imposition and scope of the asset freeze is appropriate. "A freeze of assets is designed to preserve the status quo

---

2 The Court offered Defendants the opportunity to take discovery, including the deposition of Mr. Ruta, and participate in a full hearing regarding the SEC's motion for a preliminary injunction. Through their respective counsel, Defendants declined and consented to the Preliminary Injunction.

3 We note that Cammarata filed a separate motion to dismiss or for judgment on the pleadings. (Dkt. 142). The Court has directed the SEC to respond to that motion on or before October 3, 2022 at 12:00 p.m. (Dkt. 143). The SEC has stated valid claims for relief against Cammarata and the other Defendants and will file an opposition in accordance with the Court's Order.

by preventing the dissipation and diversion of assets." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000). *See also Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993). An asset freeze can ensure "that any funds that may become due" such as disgorgement, civil penalty, and prejudgment interest, "can be collected." *See SEC v. Unifund Sal,* 910 F.2d 1028, 1041-42 (2d Cir.1990) (holding that a freeze order on a brokerage account in an amount equal to the potential disgorgement and civil monetary penalty was appropriate relief). As one district court in this Circuit has observed, "[i]n initiating securities litigation, the Government frequently obtains a court-ordered freeze of the defendant's assets." *SEC v. Forte*, 598 F. Supp. 2d 689, 692 (E.D. Pa. 2009) (denying defendant's request to release funds subject to asset freeze) (citing *Unifund Sal*, 910 F.2d at 1041).

To obtain an asset freeze at the temporary restraining order or preliminary injunction stage, the Commission need only show "either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws." *Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011) (internal quotations omitted). Where a freeze order is appropriate, a court may freeze any available assets, including assets not traceable to the fraud. *SEC v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995), *aff'd sub nom.*, *SEC v. Estate of Hirshberg*, 101 F.3d 109 (2d Cir. 1996). In *Grossman*, the Court stated: "[i]t is irrelevant whether the funds affected by the Asset Freeze are traceable to the illegal activity[.]" *Id. See also Forte*, 598 F. Supp. 2d at 693 (citing *Grossman* with approval); *SEC v. Current Fin. Servs*., 62 F. Supp. 2d 66, 68 (D.D.C. 1999) (refusing to release personal funds not traceable to the fraud because defendant's liability exceeded the total funds frozen).

Here, with Defendants' consent, the Court froze Defendants' assets and assets of any entities that they own or control. While certain assets are difficult to value, there is no dispute

that the value of the frozen assets falls below Defendants' potential liability. At the January 11, 2022 status conference, counsel for Cammarata agreed that the pertinent inquiry for the scope of the freeze was the value of the assets frozen, and not whether those assets derived directly or indirectly from the fraud:

> [A]s much as I would prefer to be in a situation where it was an analysis of tainted versus untainted for purposes of restraint, I am compelled to note for Your Honor that there is authority, which grants the Court the ability to restrain sums that are subject to disgorgement, as well as penalties and interest. Under that case law, that would seem to grant the Court authority to restrain funds beyond the untainted amount. Now, with respect to attorneys' fees, those untainted funds are available pursuant to United States versus Luis because of the parties' Sixth Amendment interest in defending themselves in the case.

*See* Dkt. 96-2, Transcript, January 11, 2022, at p. 15:23 – 16:09, attached as Exhibit 1 to Declaration of John Donnelly. Defendants are facing massive liability, including disgorgement of the more than $40 million they stole plus prejudgment interest on the disgorgement, and civil penalties of up to $775,000 *per violation* for the defendant entities, and $160,000 *per violation* for the Individual Defendants or equal to their gross pecuniary gain. *See* Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. Because Defendants' known assets fall well short of their potential liability, the Court has appropriately frozen Defendants' assets and assets of entities they own or control to maintain the status quo and preserve the opportunity to collect on a judgment in this case, including civil penalties. *See Infinity Grp.*, 212 F.3d at 197 ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets."); *Unifund SAL*, 910 F.2d at 1041-42 (holding that a freeze order on a brokerage account in an amount equal to the potential disgorgement and civil monetary penalty was appropriate relief).

Given Cammarata's financial sophistication, international connections, and transgressions while on bail in the Criminal Action, there has always been and remains a

substantial risk that absent the asset freeze Cammarata will seek to conceal assets or move them abroad and beyond this Court's reach. *See, e.g.*, Criminal Action, Dkt. Nos. 48 (Order revoking bail and remanding Cammarata to custody); 113 (Memorandum denying Cammarata's motion for reconsideration of order revoking bail); and 114 (Order denying motion for reconsideration). In March 2022 in the Criminal Action, the Court revoked Cammarata's bail and remanded him to custody. Criminal Action, Dkt. No. 48. On April 5, 2022, the Third Circuit upheld that Order, rejecting Cammarata's appeal. Criminal Action, Dkt. No. 52. Recently, after another hearing, the Court denied Cammarata's motion for reconsideration of the Court's Order revoking his bail and remanding him to custody, stating: "the Court is less assured now than at the time of the March 10, 2022 Bail Revocation Hearing that Mr. Cammarata would appear for future proceedings or comply with any set of conditions should he be released." Criminal Action, Dkt. No. 113 at 9. The Court also observed: "it is also true that Mr. Cammarata still has access to seafaring boats, private planes, and offshore assets, that Mr. Cammarata owns an island in the Bahamas and an apartment in Colombia, and that Mr. Cammarata knows how to effectively use these means to evade border control (as demonstrated by the government's evidence that Mr. Cammarata has, on multiple occasions, assisted his girlfriend in evading border patrol and entering the United States illegally via boat from the Bahamas to Florida)." *Id.* at 14 and n.8. Cammarata's assets are as much of a flight risk as he is; accordingly, the asset freeze is necessary to maintain the status quo pending the outcome of this case.

Similarly, the requirement that Defendants not further violate the securities laws which they are charged with violating in this case pending the outcome of this matter is also appropriate. Again, Defendants and their counsel consented to the relief. This case concerns a massive, long-running fraud. The SEC has alleged that Cammarata and the other Defendants

perpetrated their securities fraud scheme since 2014 and against approximately 400 distribution funds. Absent an injunction, serial violators like Cammarata would likely continue violating the securities laws. Indeed, *SEC v. Bonastia*, 614 F.2d 908 (3d Cir. 1980), which is referenced by Cammarata, is instructive. In *Bonastia*, the Third Circuit affirmed the district court's decision granting summary judgment to the SEC on liability, but reversed the district court's decision not to impose an injunction because the district court failed to consider the relevant factors in making its determination, such as: the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations will occur. *Id.* at 912. Here, all of these factors favor imposition of an injunction, particularly a preliminary injunction to which Cammarata consented.[4]

If the Commission prevails in this case, the Court will determine the appropriate monetary relief and scope of any injunction imposed. *See, e.g.*, *SEC v. Muraca*, No. 17-cv-11400, 2019 WL 6619297, at *8 (D. Mass. Dec. 5, 2019) (finding defendant "sufficiently likely to commit future violations to warrant an injunction" even though he was "currently imprisoned, and thus not immediately in a position to commit securities violations" based on "the fact that the scheme involved multiple misrepresentations over a prolonged period of time"); *SEC v. Langford*, Case No. 08-cv-761, 2011 WL 13228240, at *5 (N.D. Ala. Aug. 8, 2011)

---

[4] The Third Circuit's decision in *SEC v. Gentile*, 939 F.3d 549 (3d Cir. 2019), which is also referenced by Cammarata, supports the obey-the-law injunction in the Preliminary Injunction entered in this case. In *Gentile*, the district court granted summary judgment to the defendant, concluding that the SEC's request for an injunction was punitive and beyond the applicable statute of limitations. The Third Circuit disagreed and reversed, holding that SEC injunctions that are "properly issued and framed" are not penalties and not subject to the statute of limitations. *Id.* at 566.

("[A]lthough [Defendant] is currently serving a prison sentence for his crimes and thus not able to re-offend in the near future, . . . the egregiousness and repetitive nature of [his] conduct justifies the injunction.").

For all the foregoing reasons, the Court should deny Cammarata's motion.[5]

Respectfully submitted,

By s/ John V. Donnelly III

John V. Donnelly III
Scott A. Thompson
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
Email: DonnellyJ@sec.gov

Attorneys for Plaintiff

Dated: September 28, 2022

---

[5] To the extent Cammarata contends that there is no legal basis for the Court's preliminary injunction because the Commission has not stated a viable claim, that ccontention is more appropriately handled in the Commission's response to Cammarata's motion to dismiss, which will be filed next week. In short, however, the Commission has stated valid claims against Cammarata and the other Defendants.