**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | : | **CIVIL ACTION** |
| **COMMISSION,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH A. CAMMARATA, et al.,** | : | |
| *Defendants*. | : | **NO. 21-cv-04845** |

<u>MEMORANDUM</u>

**KENNEY, J.**                                                    **JANUARY 22, 2024**

## I.   INTRODUCTION

The Securities and Exchange Commission ("SEC") brought suit against Defendant Joseph A. Cammarata on November 3, 2021 for violations of the Securities Exchange Act of 1934, following a criminal action against Cammarata brought by the United States for the same underlying conduct. On June 7, 2023, the SEC moved for summary judgment against Cammarata on two counts, and the Court granted that motion as to liability. Cammarata now moves for recusal and/or disqualification of the Court for the remainder of this matter.

## II.   PROCEDURAL HISTORY

Joseph A. Cammarata was indicted on October 28, 2021 for a scheme in which he, along with two co-defendants, was alleged to have submitted false claims on behalf of sham clients in order to secure unused funds from securities class action settlements. ECF No. 319 at 6, 13-14. Cammarata was represented by counsel at his trial, which involved fourteen witnesses called over six days; Cammarata himself testified for approximately six hours. *Id.* at 13. The trial began on October 19, 2022 and concluded on October 26, 2022, with the jury finding Cammarata guilty of conspiracy to commit mail and wire fraud, four counts of wire fraud, conspiracy to launder money,

and two counts of money laundering. *Id.* at 13-14. On June 6, 2023, Cammarata was sentenced to ten years of incarceration and monetary penalties totaling $48,020,572.65. *Id.* at 14.

Parallel to the criminal matter, the Securities and Exchange Commission ("SEC") filed a civil action on November 3, 2021, seeking civil penalties for the same conduct allegedly constituting violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5). *See* ECF No. 1 at 3. On the same day, the SEC filed a Motion for a Temporary Restraining Order that sought to freeze Cammarata's assets in order to prevent their dissipation. ECF Nos. 2, 3. The Court entered the TRO the following day. ECF No. 4. On January 11, 2022, the Court held a status conference to discuss the status of the case and an upcoming Preliminary Injunction hearing. ECF No. 71. The following day, the Court entered a stipulation signed by all parties, including Cammarata, as to a Preliminary Injunction Order. ECF No. 66.

On June 7, 2023, the SEC moved for summary judgment on both counts. ECF No. 260. Cammarata filed a response on July 20, 2023, and the SEC replied on July 26, 2023. ECF Nos. 285, 289. On August 31, 2023, the Court entered a Memorandum and Order granting the SEC's summary judgment motion as to liability on both counts. ECF Nos. 319, 320. Following that, the SEC filed a memorandum of law as to remedies on November 9, 2023, to which Cammarata responded on November 30, 2023; the SEC replied on December 19, 2023. ECF Nos. 336, 337, 341. The Court's decision on remedies is pending.

On January 8, 2024, Cammarata filed a motion for recusal and/or disqualification of the Court in this matter.[1] ECF No. 345. This motion is untimely and does not set out facts meeting the high bar for recusal or disqualification, and is therefore denied.

---

[1] Cammarata filed an identical motion in the parallel criminal matter, *USA v. Cammarata et al.*, 21-cr-427-1, ECF No. 341.

### III.     THE INSTANT MOTION

Cammarata asserts several bases for bias and prejudice in his motion. The bulk of his allegations stem from a January 11, 2022 hearing on the TRO. *See* ECF No. 345 at 2-5. Cammarata lists several comments by the Court at this hearing as evidence of bias, including statements pertaining to the financial position of Cammarata's family members, the status of the frozen assets, the impact of the SEC's case on Cammarata's divorce proceedings, the likely progress of the case, and the effect of the TRO and the SEC's case on various aspects of Cammarata's estate. *Id.*

Cammarata also points to the circumstances surrounding a hearing on the Temporary Restraining Order filed by the SEC on November 3, 2021. *Id.* at 2. Cammarata alleges that he was not notified of the TRO hearing, which was held on November 9, 2021 while he was in jail in Miami, and that he did not receive notice until after the hearing. *Id.* At this hearing, Cammarata cites the Court's comment that "I consider this a crime against the courts" as additional evidence of bias. *Id.*[2]

Cammarata references several motions that he alleges were not ruled on as additional evidence of bias, including a motion for hearing on the TRO filed on December 7, 2022;[3] a motion for summary judgment on December 12, 2022; a motion to alter or amend the order granting summary judgment filed on September 27, 2023;[4] and a request to unfreeze assets to appoint counsel on September 27, 2023.[5] In this vein, Cammarata also objected that the SEC's motion for summary judgment was never sent to him;[6] that the Court "immediately denied the cross-claim"

---

[2] This comment does not appear in the transcript of this hearing. *See* ECF No. 41.
[3] The Court entered an Order on this motion on December 9, 2022. *See* ECF No. 179.
[4] This filing was styled as a "Response to the Court's Memorandum granting the SEC's Motion for Summary Judgment" and thus should have been filed as an appeal to the Third Circuit. It is also largely unintelligible.
[5] The Court entered an Order on this motion on October 31, 2023. *See* ECF No. 334.
[6] The Court ordered the Clerk of Court to mail Cammarata a copy of the SEC's summary judgment motion. *See* ECF No. 274.

Cammarata filed responding to the SEC's summary judgment motion;[7] and the Court misapplied collateral estoppel in granting the SEC's motion for summary judgment.[8]

Cammarata continues in his disqualification motion by asserting that "[t]he court did indeed have personal knowledge of disputed evidentiary facts concerning the proceeding" in that it "introduced its own (or the government's false narrative) as 'personal knowledge.'" ECF No. 345 at 10.

Cammarata further alleges that the Court exhibited personal bias since the undersigned has previously served as the President Judge of the Court of Common Pleas of Delaware County, and some of the securities class action administrators involved in Cammarata's scheme were located in Delaware County. Further, Cammarata states that the undersigned's family members "may have traded in a security in which there was a securities class action settlement, or may have been an eligible claimant, or works at a brokerage firm, settlement administrator, or bank that may have held a money market security for any of the administrators." *Id.* at 10-11.

## IV.    STANDARD OF REVIEW

The recusal statute requires that a judge withdraw from a case "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. However, "[t]he mere filing of an affidavit of bias under [28 U.S.C. § 144] does not automatically disqualify a judge." *United States v. Townsend*, 478 F.2d 1072, 1073 (3d Cir. 1973) (citation omitted). Rather, the affidavit must "state the facts and the reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144. Bias that stems from "facts

---

[7] The Court denied Cammarata's motion eight days after it was filed. *See* ECF Nos. 285, 295.
[8] Disagreement with "judicial rulings… [is a] proper ground[] for appeal." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994)

gleaned from the judicial proceeding will rarely be grounds for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) (citation omitted).

The motion is considered timely if it is filed "not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." 28 U.S.C § 144. The "timeliness requirement is crucial to the integrity of the judicial process and is intended to ensure that a party is not simply filing the motion on the basis of subsequent unfavorable rulings or treatment by the court." *Microsoft Corp. v. Softicle.com*, No. 16-cv-2762, 2018 WL 4179478, at *2 (D.N.J. Aug. 30, 2018) (citations and internal quotations omitted). An affidavit is considered untimely when "the party significantly invokes participation by the court in pretrial motions or other judicial proceedings between the time he first learned" of the alleged bias and when he filed his recusal motion. *Shank v. Am. Motors Corp.*, 575 F. Supp. 125, 128 (E.D. Pa. 1983).

The disqualification statute requires that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned . . . [or] Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455. Although this statute does not contain a timeliness requirement, the Third Circuit has "concluded that parties seeking disqualification under § 455(a) should do so in a timely manner," given that timeliness "is but one of the factors which engages a court's discretion in determining whether a judge shall be relieved from [his] assignment." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004) (citations omitted).

A disqualification motion on the basis of bias is only appropriate if the bias "stem[s] from an extrajudicial source." *Liteky v. U.S.*, 510 U.S. 540, 543 (1994) (citation omitted). A bias from

an extrajudicial source is one that "is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980) (citation omitted). "[A] claim of bias or prejudice based on judicial knowledge gained from prior hearings or other cases is not sufficient grounds for disqualification of a judge whether it be from prior judicial exposure to the defendant or prior judicial rulings adverse to the defendant in the same or different cases." *United States v. Sinclair*, 424 F. Supp. 715, 718 (D. Del. 1976) (citation omitted), *aff'd*, 566 F.2d 1171 (3d Cir. 1977) (unpublished table decision).

## V.   DISCUSSION

### I.   Timeliness

The bulk of Cammarata's substantive allegations arose in November 2021 and January 2022. As Cammarata is aware, there has been a substantial amount of activity in this case since then. Courts in this circuit have dismissed recusal motions as untimely where the moving party "participated in numerous conferences and filed several pretrial motions" while taking no more than five months to file a recusal motion. *Microsoft*, 2018 WL 4179478, at *2. *See also Shank*, 575 F. Supp. at 128 (denying a recusal motion as untimely where six months elapsed and defendants made sixteen filings between learning of the alleged prejudice and filing their motion). This case far exceeds these limits. Between the January 2022 status conference and Cammarata's filing of the instant motion, nearly two years elapsed and Cammarata himself has made approximately 20 filings, including two of his own summary judgment motions, and participated in two hearings. Cammarata has not stated any good cause as to why his recusal motion was delayed.

### II.   Bias or Prejudice

Although Cammarata's motions could be denied solely on the basis that they were untimely, the Court will respond to the substantive allegations as well. The bulk of Cammarata's allegations arose out of the January 11, 2022 hearing. Each of the Court's comments at that hearing

pertained to knowledge gained from this judicial proceeding. Cammarata's editorial notes following each allegedly biased statement by the Court do not indicate that any statement was a result of extrajudicial knowledge. Each of the comments pertained to the disposition of assets that the Court learned about via the instant case. Although Cammarata alleges that the Court made "angry [and] vindictive" comments, ECF No. 345 at 3, "'[e]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' are not grounds for recusal." *Microsoft*, 2018 WL 4179478, at *3 (alteration in original) (citing *Liteky*, 510 U.S. at 555). Personal comments "reflecting even strong views about a defendant will not call for a judge's recusal so long as those views are based on his own observations during the performance of his judicial duties." *U.S. v. Barry*, 961 F.2d 260, 263 (D.C. Cir. 1992). Regardless, the transcript of the proceeding as a whole reveals that the undersigned's comments were not personally disparaging comments, but rather practical observations based on the facts of the case. *See* ECF No. 71.

None of the comments cited by Cammarata indicate that the Court was using knowledge or opinions derived from extrajudicial sources to inform its opinions of Cammarata. Cammarata alleges that the Court used its personal knowledge by adopting the "government's false narrative." ECF No. 345 at 10. However, opposing party's view of the facts fall squarely within the realm of knowledge gained from the instant proceeding.

Cammarata's miscellaneous complaints are similarly unavailing. Cammarata alleges that the Court should recuse itself because of its prior employment. Specifically, Cammarata notes that the Court served as the Sheriff and thus alleges a bias towards law enforcement in the instant proceedings. Cammarata also claims that because the undersigned previously served as the President Judge of the Court of Common Pleas in Delaware County, he is biased since many of

the securities class action claims administrators were based in Pennsylvania and Delaware County. Without more, these bare allegations are insufficient for recusal or disqualification. It is well settled that facts "will not suffice to show the personal bias required by the statute if they go to the background and associations of the judge rather than to his appraisal of a party personally." *U.S. v. Martorano*, No. 82-cr-11, 1987 WL 13677, at *2 (E.D. Pa. 1987) (citing *Parker Precision Products Co. v. Metropolitan Life Ins. Co.*, 407 F.2d 1070, 1077-78 (3d Cir. 1969)). The mere fact that the Court served as a sheriff does not inherently indicate a bias toward law enforcement. Nor does the fact that the Court ruled against Cammarata indicate bias. *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . [a]lmost invariably, they are proper grounds for appeal, not for recusal." (citation omitted)).

Cammarata's assertion that the Court should be recused or disqualified because the instant conduct took place in Pennsylvania is precisely backwards. Setting aside the principle that a judge's prior background is not itself a basis for recusal, a judge is *required* to hear cases that fall within his or her geographical ambit. *See* 28 U.S.C. § 1391(b) ("[A] civil action may be brought in a judicial district in which any defendant resides."). To require recusal on the basis that the judge practices in the state in which the conduct occurred would turn the workings of our judicial system on their head.[9]

### III.   CONCLUSION

Cammarata's motions arrive years after the alleged incidents, following substantial activity in his case. They contain no sound basis for recusal or disqualification under the law. Cammarata's motions for recusal and disqualification are denied. An appropriate Order will issue.

---

[9] Cammarata speculates that the Court's "family members . . . may have traded in a security in which there was a securities class action settlement, or may have been an eligible claimant, or work[] at a brokerage firm, settlement administrator, or bank that may have held a money market security for any of the administrators." This is unsupported speculation rather than a "fact" as required by 28 U.S.C. §144 and will therefore be disregarded.

BY THE COURT:

/s/ Chad F. Kenney

_____
CHAD F. KENNEY, JUDGE