**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>JOSEPH A. CAMMARATA, ERIK COHEN, DAVID H. PUNTURIERI, ALPHAPLUS PORTFOLIO RECOVERY CORP., AND ALPHA PLUS RECOVERY LLC,<br><br>Defendants. | CIVIL ACTION NO. 2:21-cv-04845<br><br>Honorable Chad F. Kenney |

# PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT JOSEPH CAMMARATA'S MOTION TO DISSOLVE THE ASSET FREEZE

The Court should deny Defendant Joseph Cammarata's motion to dissolve the asset freeze until the judgment obtained by the SEC is satisfied. In granting the SEC's motion for summary judgment against Cammarata, the Court ordered that Cammarata was liable for $50,471,573 (comprised of $43,496,148 in disgorgement and $6,975,425 in prejudgment interest). At the SEC's request and to avoid double collection, Cammarata's liability to the SEC was deemed partially satisfied by the amount of the restitution and forfeiture ordered against Cammarata in the related criminal case, *United States v. Cammarata*, No. 21-cr-427 (E.D. Pa.) ("Criminal Case"), which totaled $47,769,779.02. Thus, Cammarata was obligated to pay the SEC $2,701,793.98 within 30 days of the judgment. He has not done so. Likewise, he has not paid or attempted to pay the judgment in the Criminal Case.

Moreover, based on the available information, the value of the frozen assets falls short of Cammarata's liability. As the Court is aware and has been noted multiple times in this case,

Cammarata's assertions of the value of his assets are unsupported. None of the counsel who have represented Cammarata in this case or the Criminal Case have contended in any filing that the asset freeze in this case was overbroad. Indeed, when represented by counsel, Cammarata consented to the extension of the asset freeze via the preliminary injunction. Cammarata has never provided an accounting of his assets nor any evidence to support his purported valuation of the frozen assets. As previously noted, based on the available information, as of August 1, 2023, the SEC (and the United States) believes that the value of the frozen assets falls below Cammarata's liability, and even further below when one considers that Cammarata consented to Third-Party Intervenor Nina Cammarata, Cammarata's now ex-wife, receiving 80% of the assets of the marital estate.[1] (Dkt. 297). That view remains unchanged.

Today, the SEC has also filed a motion to lift the asset freeze for the limited purpose of collecting on its judgment. The Court should grant the SEC's motion, lift the asset freeze for the limited purpose of transferring $2,701,793.98 million and applicable post-judgment interest from the frozen assets to an account designated by the SEC.

Once the SEC has *collected* on its judgment, it agrees that the freeze could be lifted regarding the remaining assets of Cammarata, but not the other Defendants. However, in light of the high likelihood that Cammarata will seek to dissipate unfrozen assets or move them offshore beyond the reach of the Court and other creditors, the SEC respectfully suggests that the Court afford the United States, Nina Cammarata, and possibly the IRS 30 days after the SEC judgment is satisfied to seek their own asset freezes or other relief. In light of the judgment in the Criminal

[1] While Cammarata's consent to that division of assets in the divorce proceeding may not be enforceable against third-parties like the SEC and the United States as Cammarata may have been attempting to conceal assets from collection, it is likely enforceable by Nina Cammarata against Cammarata, and Nina Cammarata is expected to receive a significant amount of assets untainted by the fraud.

Case, the divorce proceeding with Nina Cammarata, and the criminal tax case against Cammarata (*United States v. Cammarata*, No. 22-cr-639 (DNJ)) ("Tax Case") in which Cammarata has been convicted and is scheduled to be sentenced on April 3, 2024, Cammarata's liabilities far exceed any remaining interest he may have in the known frozen assets. Accordingly, the United States, Nina Cammarata, and/or the IRS may wish to preserve the status quo and prevent the dissipation or transfer of the remaining assets while they negotiate a division of assets.

Below, after briefly reciting the factual and procedural background, first, we demonstrate that the asset freeze should remain in effect until the SEC's judgment against Cammarata is satisfied in full. And, second, we briefly note that Cammarata's rote accusations of misconduct are baseless.

## BACKGROUND[2]

From approximately 2014 through 2021, Cammarata and his co-conspirators orchestrated a scheme to steal more than $40 million from nearly 400 court-approved distribution funds specifically established to return assets recovered through securities class actions and SEC enforcement actions back to injured investors. Defendants submitted false claims in the name of Quartis Trade & Invest Inc., Nimello Holdings Limited, and Inversiones Invergasa SAS (collectively, "Sham Clients"), shell companies Defendants acquired and controlled, to distribution fund administrators falsely attesting to thousands of securities transactions and supported those fraudulent claims with fabricated securities trading records. The Sham Clients

[2] The Court is familiar with both this case and the Criminal Case. The SEC incorporates by reference as if fully set forth herein the factual recitation in its Motion for Summary Judgment as to Liability Against Cammarata and the Statement of Undisputed Facts and Evidence filed in support thereof. *See* Dkt. Nos. 260-1 at 3-13 and 260-2 – 260-18. In addition, in granting the SEC's Motion for Summary Judgment, the Court also recited relevant facts and evidence. *See* Mem. and Opinion at 1-13, Dkt. 319. Accordingly, we include only a brief recitation of the relevant background here.

never engaged in any business and never made any of the claimed securities trades. However, believing the claimed transactions to have been real, fund administrators liquidated the settlement fund holdings (sometimes held in escrow in money market funds or other securities) and issued payments to Defendants, who then used these payments to fund their own lavish lifestyles, including to purchase luxury cars, boats, and real estate.

Cammarata, "a seasoned securities professional" with "approximately three decades in the brokerage business," was the mastermind of the scheme. (Dkt. 319 at 2, 7). During much of the relevant period, from 2010 to 2018, Cammarata was President and Chief Executive Officer of SpeedRoute LLC ("SpeedRoute"), a registered broker-dealer. Cammarata abused his position as owner and CEO of Speedroute, an agency-only broker, to obtain the trade data generated by Speedroute's customers. Defendants used this trade data to file the fraudulent claims in the names of the Sham Clients.

Cammarata knew Defendants' scheme was illegal. (Dkt. 319 at 12). At one point, he emailed his coconspirators: "I woke up in the middle of the night thinking about JAIL." (*Id.*) As the scheme began to unravel, Defendants contemplated bribing an investigator for one of the distribution fund administrators with $1 million. (*Id.* at 13). They also discussed fleeing the country. *Id.*

## PROCEDURAL HISTORY

On November 3, 2021, the SEC filed its complaint and sought a temporary restraining order and asset freeze. (Dkt. Nos. 1-3). On or about the same day, defendants Cammarata, Eric Cohen, and David Punturieri were arrested in connection with the Criminal Case, which arises out of the same facts and circumstances at issue in this case. On November 4, 2021, the Court granted the SEC's motion for a temporary restraining order and asset freeze. Subsequently, the

parties to the litigation agreed to extend the temporary restraining order and asset freeze, and the Court entered the Orders. (Dkt. Nos. 16 (Nov. 10, 2021) and 38 (Dec. 3, 2021)).

On January 12, 2022, the parties, including Cammarata, stipulated to a preliminary injunction and asset freeze. (Dkt. No. 65). The next day, the Court approved the stipulation and entered the Order imposing a preliminary injunction and asset freeze. (Dkt. No. 66). The Court subsequently stayed proceedings in this case pending the outcome of the Criminal Case. (Dkt. No. 69).

On October 26, 2022, after trial in the Criminal Case, a jury found Cammarata guilty of wire fraud, conspiracy to commit mail and wire fraud, money laundering, and conspiracy to commit money laundering. (Criminal Case, Dkt. 196-1). Defendants Cohen and Punturieri pled guilty in the Criminal Case, admitted their misconduct, and testified against Cammarata at trial. (*See* Criminal Case Dkt. 166-1; 159-1). On June 6, 2023, the Court sentenced Cammarata to 10 years in prison and to over $47 million in restitution and forfeiture.

On June 7, 2023, the SEC filed a Motion for Summary Judgment as to Cammarata's liability. (Dkt. Nos. 260 – 260-18). On August 31, 2023, the Court granted the SEC's Motion for Summary Judgment, finding Cammarata liable for securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and for aiding and abetting the violations of the same securities laws by Defendants AlphaPlus Portfolio Recovery Corp. and Alpha Plus Recovery LLC (collectively the "Entity Defendants"). (Dkt. No. 319-320). On January 23, 2024, the Court entered a final judgment in this case against Cammarata and the Entity Defendants which, among other things, found Cammarata and the Entity Defendants jointly and severally liable for $43,496,148 in disgorgement together with prejudgment interest in the amount of $6,975,425, for a total of $50,471,573. Pursuant to the SEC's motion and to avoid double collection,

Cammarata and the Entity Defendants' liability to the SEC was deemed partially satisfied by the Orders of Restitution and Forfeiture entered against Cammarata in the Criminal Case, which totaled $47,769,779.02. (Dkt. 352). Therefore, Cammarata and the Entity Defendants' joint and several payment obligation to the SEC is $2,701,793.98. Subsequently, on February 6, 2024, Cammarata filed a motion to dismiss or for relief from the judgment. (Dkt. 353). The SEC opposed the motion. (Dkt. 358).

## ARGUMENT

The asset freeze should remain in place until the SEC collects on its judgment. Cammarata owes more than $50 million to the SEC and United States from the fraud at issue in this case, and likely will owe millions more to the IRS when he is sentenced in the Tax Case, which is scheduled for April 3, 2024. Based on the available information, the value of the frozen assets is less than this total liability. Although Cammarata baldly asserts that the frozen assets are worth $75 million, he has never identified his assets, provided an accounting, provided any evidence to support his purported valuation, and none of the attorneys representing him have ever contended that the asset freeze was overbroad in any filing. When one considers that Cammarata consented to Nina Cammarata receiving 80% of the marital estate, Cammarata's remaining interest in the frozen assets, if any, falls well below his liability.

### I. Until Cammarata Satisfies The SEC's Judgment, The Freeze Should Remain In Place

Cammarata owes the SEC more than $2.7 million. The SEC has now filed a motion to collect that judgment from the frozen assets. Until that judgment is satisfied, the freeze should remain in place as to all of the assets to preserve the status quo and the SEC's ability to collect—particularly as the United States, Nina Cammarata, and the IRS may assert an interest in the same assets and the assets are insufficient to satisfy all of the various judgments. Absent the freeze,

Cammarata will likely dissipate or conceal the assets, or attempt to move them overseas beyond the Court's reach, actions that would frustrate the SEC's collection efforts (and those of the United States and others).

"A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000). *See also CFTC v. Am. Metals Exchange Corp.*, 991 F.2d 71, 79 (3d Cir. 1993). An asset freeze can ensure "that any of the funds that may become due," such as disgorgement, civil penalty, and prejudgment interest, "can be collected." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041-42 (2d Cir. 1990) (holding that a freeze order on a brokerage account in an amount equal to the potential disgorgement and civil monetary penalty was appropriate relief). *See also SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974). As one district court in this Circuit has observed, "[i]n initiating securities litigation, the Government frequently obtains a court-ordered freeze of the defendant's assets." *SEC v. Forte*, 598 F. Supp. 2d 689, 692 (E.D. Pa. 2009) (denying defendant's request to release funds subject to asset freeze) (citing *Unifund Sal*, 910 F.2d at 1041).

Here, the Court properly froze Defendants' assets and assets of any entities that Defendants owned or controlled at the TRO stage and, with the consent of all parties—including Cammarata—continued the freeze via the Preliminary Injunction. The freeze remains appropriate as it has now been conclusively established that Cammarata violated the federal securities laws.

The SEC agrees that once its judgment is satisfied, the asset freeze would no longer be necessary as to the SEC. However, until the judgment is satisfied, the asset freeze is necessary because several parties may claim these same assets and the value of the assets falls below

Cammarata's liability, and because there is a significant risk that Cammarata would either dissipate assets or move them offshore. *See United States v. First National City Bank*, 379 U.S. 378, 385 (1965) (concluding that asset freeze was appropriate to prevent dissipation of assets or transfer of assets abroad); *Unifund SAL*, 910 F.2d at 1041-42. The SEC, the United States, Nina Cammarata, and (likely) the IRS are all seeking to collect from the same pot of assets, which is insufficient to satisfy their various judgments. While the SEC agrees that the asset freeze obtained by the SEC should not be held in place indefinitely for the benefit of other parties, including the United States and Nina Cammarata, it should be maintained in its entirety until the SEC's judgment is satisfied. The Court also should establish a schedule for these other interested parties to file applications (if they chose) relating to any claims they may have over the frozen assets. The SEC respectfully submits that at least 30 days after it collects on its judgment is a reasonable deadline for any such applications.

In addition, the transfer of assets abroad is a particular threat here because Cammarata is facing massive liability; claims to have recently lived in Colombia, South America; has accounts and business dealings in Colombia; owns overseas real estate, including a private island in the Caribbean and at least one residence in Colombia; and had his bail revoked in the Criminal Case in part because he purchased a one-way plane ticket in his name to Colombia. Accordingly, the freeze should remain in place until the SEC judgment is satisfied.

## II. Cammarata's Baseless Accusations Of Misconduct Are Without Merit

As the Court is all-too-familiar with what have become rote accusations of misconduct from Cammarata, we will merely note that they are unsubstantiated and baseless. As he has done throughout the case, Cammarata has blamed his circumstances on seemingly everyone other than himself. But the reality is simple—Cammarata is facing the consequences of his own actions

and decisions. He, along with his coconspirators who confessed and testified against him, perpetrated a massive fraud, stealing more than $40 million. Among other things, Cammarata abused his position as a broker-dealer to carry out this fraud; authored damning emails and electronic messages; helped create phony securities trading records; and deceived and lied to administrators when they raised questions. The jury in the Criminal Case heard his testimony and rejected it. In short, Cammarata got caught and has been held accountable, and he should not be permitted to prematurely access – and potentially manipulate – assets the Court correctly froze for the protection of the victims of his fraud.

## CONCLUSION

For all the foregoing reasons, Cammarata's motion should be denied. If the Court grants the SEC's motion to collect and the SEC's judgment is satisfied, then the Court should permit the United States, Nina Cammarata, and/or the IRS at least 30 days to seek their own freeze or other relief before lifting the freeze on the remaining assets of Cammarata. If the SEC's judgment is not satisfied at this time, then the full freeze should remain in place to preserve the status quo.

Respectfully submitted,

By s/ John V. Donnelly III

John V. Donnelly III
Judson T. Mihok
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103

Telephone: (215) 597-3100
Facsimile: (215) 597-2740
Email: DonnellyJ@sec.gov

Dated: March 21, 2024